IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STANLEY ROBINSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Case No. 4:10CV01205 AGF |
| | ) |
| DAVE DORMIRE, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner Stanley Robinson for a writ of habeas corpus pursuant to 28 U.S.C. ' 2254. Petitioner was convicted by a jury of first degree robbery, armed criminal action, and resisting arrest. He was sentenced as a persistent offender to a total of 30 years' imprisonment. For habeas relief, Petitioner claims that (1) the prosecutor's use of an analogy comparing Petitioner, who had pled guilty to felonies on six prior occasions, to a car salesman who had previously sold six faulty cars violated Petitioner's right to due process because this analogy was an improper comment on Petitioner's propensity to commit robbery; and (2) Petitioner received constitutionally ineffective assistance of counsel because defense counsel failed to request a hearing on his motion to suppress two eyewitness identifications of Petitioner. For the reasons set forth below, federal habeas relief shall be denied.

# BACKGROUND

## Trial

The evidence adduced at trial established the following. On the evening of August 17, 2004, Greta Brotherton went to visit the home of Brenton Gary, her boyfriend. Brotherton parked across the street from Gary's home near a street lamp, so the area was well lit. As she was taking her luggage out of her car, Petitioner approached her and asked what time it was. When she responded, Brotherton looked at Petitioner and had an opportunity to see him. Petitioner then started to walk away.

As Brotherton was climbing the stairs to Gary's home, Petitioner offered to help her with her luggage, but she declined. Petitioner went up a grassy area next to the stairs and reached the top of the stairs at the same time as Brotherton. Brotherton looked closely at Petitioner when he met her at the top of the stairs. Petitioner approached her and demanded that she give him her property. Then he pulled out a knife and repeated his demand. Brotherton gave Petitioner her purse and rolling travel bag. Petitioner demanded she give him everything else while jabbing his knife in the air, so she gave Petitioner her watch and the jewelry she was wearing, including a ring. Petitioner then told her to run, which she did. Petitioner chased her for a time, then turned and went in the opposite direction.

When Brotherton no longer heard footsteps behind her, she looked back and saw Petitioner running in the opposite direction. She then returned to her boyfriend's house for help. Brotherton told her boyfriend that she had been robbed and pointed towards Petitioner as he rounded a corner. Gary ran in the direction Brotherton pointed him, and

he saw Petitioner walking down the street pulling a rolling suitcase. He did not see anyone else in the area. When Petitioner noticed Gary, he picked up the luggage and ran. Gary yelled back to Brotherton, who had been following Gary, to get help. She returned to Gary's house and told Gary's brother that Gary needed help and that she had just been robbed.

Meanwhile, Gary had lost sight of Petitioner when the latter approached a house, but Gary continued to walk around the house trying to find him. Gary spotted Petitioner knocking on the back door of the house. Petitioner told Gary that he had not done anything. Petitioner drew a knife when Gary ran towards him. Seeing Petitioner draw a knife, Gary picked up a metal chair and struck Petitioner with it several times as Petitioner tried to get into the house. Petitioner's aunt let him into the house and they succeed in closing the door on Gary.

Brotherton and Gary's brother got to the house as the police arrived. Brotherton waited with Gary on a corner near the house to see if the police would find Petitioner and recover her things. The police officers canvassed the area looking for Petitioner and found Brotherton's suitcase in the house. An officer then spotted Petitioner hiding under the front deck holding a knife and officers moved around the deck to apprehend him. Petitioner dropped the knife when the police directed him to do so. Brotherton and Gary saw Petitioner charge out from under the deck and struggle to get away from the officers. The officers finally succeeded in handcuffing Petitioner, and when they pulled him off of the ground, Brotherton immediately, and without prompting from any of the police officers, identified Petitioner as the man who robbed her. When Brotherton identified

3

Petitioner she was standing about 50 feet away from him, several police officers were standing around Petitioner, and Petitioner was handcuffed. After Brotherton identified Petitioner as the perpetrator, Gary then stated that Petitioner was the man he had confronted earlier. The police found Brotherton's ring, watch, and cell phone under the porch that Petitioner was found hiding under.

Brotherton and Gary identified Petitioner at trial as the perpetrator. Petitioner had filed a motion at the start of the trial to suppress the out-of-court and any in-court identifications by Brotherton and Gary on the ground that the police procedures were an impermissibly suggestive show-up and created a substantial risk of misidentification and the identifications were unreliable. The court denied the motion without an evidentiary hearing. Petitioner renewed the motion twice during trial, once at the end of the state's case and once at the end of the case for the defense. The court denied the motion each time.

Petitioner testified on his own behalf, presenting an alibi defense. He admitted to pleading guilty on six prior occasions to a total of seven felonies, including three convictions for robbery. Prior to closing arguments, the jury was instructed to consider Petitioner's previous convictions for the sole purpose of deciding his believability and not as evidence that Petitioner was guilty of the offense with which he was then charged. During his rebuttal closing argument, the prosecutor analogized Petitioner to a car salesman. The part of the prosecutor's argument that is pertinent to Petitioner's due process claim is as follows:

> [Prosecutor]: About the defendant's credibility you can consider all those priors to his credibility. Look at it this way, if you went to a car lot and you spoke to a guy that sells cars and you found out this guy sold six cars that were faulty in the past month and you go in and he goes "this is a quality automobile, buy this car" is anybody in this jury box gonna give that car dealer their money?
> [Defense Counsel]: Objection, Your Honor.
> [Prosecutor]: And it's the same thing here. He has zero credibility.

(Resp. Ex. E at 495.) Petitioner moved for a mistrial based on this comment, but the court denied the motion.

### **Direct Appeal and State Postconviction Proceedings**

On direct appeal, the only issue Petitioner raised was that the prosecutor argued that Petitioner had a propensity to commit robbery rather than that he lacked credibility as a witness when the prosecutor analogized Petitioner, during closing argument, to a car salesman who had sold six faulty cars.

The Missouri Court of Appeals rejected Petitioner's argument noting that although it is improper to use prior convictions as evidence of guilt or propensity to commit crimes, it is permissible to use prior convictions to attack the defendant's truthfulness and credibility in his testimony. The Missouri Court of Appeals noted that, although the analogy the prosecutor used was "imperfect," the prosecutor focused on Petitioner's credibility not on his propensity to commit other crimes. The appellate court also noted that the evidence of Petitioner's guilt was overwhelming. (Resp. Ex. F at 4.)

In his amended motion for post-conviction relief, Petitioner raised two claims of ineffective assistance of counsel. First, he argued that his trial counsel was ineffective in failing to request a hearing on the motion to suppress the eyewitness identifications of
5

Petitioner by Brotherton and Gary. He argued that if trial counsel had requested a hearing, the court would have suppressed the identifications because they were the product of an impermissibly suggestive procedure and were unreliable. Petitioner argued that the identifications were impermissibly suggestive because Brotherton and Gary identified Petitioner when viewing him from about 50 feet away in poor lighting while he was handcuffed and surrounded by police officers. He also argued that neither had a good opportunity to view the assailant. Second, Petitioner claimed that his trial counsel was ineffective for failing to object during the state's case to the admission of the out-of-court identifications made by Brotherton and Gary. (Resp. Ex. I at 21-34.)

The state court denied the postconviction motion without an evidentiary hearing. The court found that Petitioner's first claim was without merit because the identifications were not the result of an impermissibly suggestive procedure, nor were they unreliable. The court found that Brotherton had numerous opportunities to view the person who robbed her; that although the robbery took place at night, the area was well lit according to Brotherton; that the crime and identification occurred within a brief period of time; and that Brotherton immediately identified Petitioner as the man who robbed her. The court noted that Petitioner's trial counsel filed a motion to suppress the identifications at the beginning of the trial and renewed the motion during trial. The court held that promptly showing a suspect to a witness is a proper procedure so long as the police do not unduly pressure the witness to make a positive identification. The court rejected Petitioner's second claim because counsel could not be ineffective for failing to make a meritless objection. (Resp. Ex. I at 37-40.)

6

The Missouri Court of Appeals affirmed the denial of postconviction relief, concluding that the motion court's findings and conclusions were not clearly erroneous. On Petitioner's first claim, the appellate court noted that "[p]rompt identification of a freshly-apprehended suspect by eyewitnesses greatly enhances the reliability of the identification." The court expressed skepticism as to whether the situation presented in this case was a show-up. It noted that Brotherton spontaneously identified Petitioner as the man who robbed her, and Gary immediately confirmed Brotherton's identification of Petitioner. Finding nothing about the procedures to be impermissibly suggestive, the court did not evaluate the reliability of the identifications. (Resp. Ex. J at 6-9.)

Having found that the out-of-court identifications were clearly admissible and that the trial court properly denied the motion to suppress, the Missouri Court of Appeals noted that counsel could not be deemed ineffective for failing to object to the out-of-court identification when that objection would have been meritless. *Id.* at 8.

**Federal Habeas Petition**

As noted above, Petitioner raises two claims in his federal habeas petition. First, Petitioner raises the claim he made on direct appeal regarding the prosecutor's closing argument. Second, Petitioner claims ineffective assistance of counsel based on his trial counsel's failure to request a hearing on his motion to suppress the eyewitness identifications by Brotherton and Gary. Respondent argues that habeas relief should be denied because the state courts' determinations of the issues were legally and factually reasonable.

# DISCUSSION

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. ' 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 40-06 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 413; *see also Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003).

A case cannot be overturned merely because it incorrectly applies federal law; the application must also be "unreasonable." *Wright v. Bowersox*, 720 F.3d 979, 985 (8th Cir. 2013). "The factual findings of the state court also may be challenged in a ' 2254 petition,

but they are subject to an even more deferential review." *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001).

**<u>Ineffective Assistance of Counsel Claim</u>**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must not only show that counsel=s performance was deficient, but must also show that he was prejudiced by his counsel's incompetence. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the prejudice prong, a petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Kennedy v. Kemna*, 666 F.3d 472, 477 (8th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Petitioner contends that his trial counsel was ineffective for failing to request a hearing on his motion to suppress the identifications made by Brotherton and Gary. Petitioner argues that the "show-up" was impermissibly suggestive because Petitioner was hand-cuffed and surrounded by police officers when Brotherton identified Petitioner as her assailant. The Missouri Court of Appeals noted that Brotherton was present with Gary at the scene when the police officers found Petitioner hiding under his aunt's porch. Brotherton spontaneously identified Petitioner as her assailant, and Gary then identified Petitioner as the man he had a confrontation with earlier. The Missouri Court of Appeals held that there was nothing to indicate that the police procedures or actions were impermissibly suggestive.

This Court concludes that the Missouri Court of Appeals' rejection of Petitioner's ineffectiveness claim was not unreasonable. First, the state courts' determination of the facts is supported by the evidence presented at trial. Second, the legal conclusion that the

9

identification procedure was not unnecessarily suggestive was not unreasonable. "Absent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations." *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998) (citation omitted). "Necessary incidents of on-the-scene identifications, such as the suspects being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive." *Id.* (citing *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994)). Brotherton identified Petitioner spontaneously without any prompting from the police, and Gary identified Petitioner as the man he had confronted earlier that evening.

Moreover, Petitioner cannot show prejudice as required by *Strickland*. As the motion court noted, the Missouri Court of Appeals stated on direct appeal that the evidence of Petitioner's guilt was "overwhelming" when it reviewed the case on direct appeal. The police found Petitioner hiding under his aunt's front porch with a knife. A knife had been used in the robbery. The police also found Brotherton's stolen ring and watch under the porch, and inside the house the police found Brotherton's stolen rolling suitcase. This Court concludes that it was not unreasonable for the trial court to determine that Petitioner could not show ineffective assistance of counsel in failing to request a hearing on the motion to suppress the two identifications because the evidence of Petitioner's guilt was overwhelming.

**<u>Prosecutor's Closing Argument</u>**

To prevail on a due process claim based on an allegedly improper comment by a prosecutor in closing argument, a habeas petitioner must show that the prosecutor's remarks were "so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Kennedy*, 666 F.3d at 481 (citation omitted). "The

10

relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

To determine whether a prosecutor's statement infected Petitioner's trial with unfairness, the court examines the totality of the circumstances. *Kellogg v. Skon*, 176 F.3d 447, 451 (8th Cir. 1999); *Antwine v. Delo*, 54 F.3d 1357, 1363 (8th Cir. 1995) (listing factors including (1) the type of prejudice that arose from the argument, (2) defense counsel's efforts to minimize the effect in his argument, (3) whether jury was properly instructed in the jury instructions, and (4) whether there is a reasonable probability that the outcome would have been different).

Petitioner argues that the prosecutor's analogy asked the jury to consider Petitioner's prior convictions as substantive evidence of his guilt or as evidence of his propensity to commit robbery. As stated above, the Missouri Court of Appeals noted that the prosecutor's "imperfect" analogy and argument focused on the defendant's credibility, not on any propensity to commit robberies or other crimes. Courts are urged to exercise caution in inferring a negative consequence from a prosecutor's statement during closing arguments:

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

*James v. Bowersox*, 187 F.3d 866, 870 (8th Cir. 1999) (quoting *Donnelly*, 416 U.S. at 646-47).

As Respondent argues, a prosecutor may use a defendant's prior convictions in arguing the defendant lacks credibility. *See United States v. Collier*, 527 F.3d 695, 700 (8th Cir. 2008) ("prior convictions are highly probative of credibility 'because of the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath'") (quoting *United States v. Chauncey*, 420 F.3d 864, 874 (8th Cir. 2005)). And the jury was properly instructed to only consider Petitioner's prior convictions for credibility purposes. This Court concludes that the state courts' determination that the prosecutor's comments did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," was not contrary to or an unreasonable application of federal law. *See Darden*, 477 U.S. at 181 (citation omitted).

The Missouri Court of Appeals also held that Petitioner had not demonstrated a reasonable probability that the verdict would have been different absent the prosecutor's remarks because the evidence of guilt was overwhelming. Upon review of the trial transcript, this Court concludes that the state court's determination that Petitioner failed to show prejudice, given the evidence of guilt, was not contrary to or an unreasonable application of federal law. *See, e.g.*, *Kennedy*, 666 F.3d at 475 n.2, 481-82 (denying federal habeas relief where prosecutor used a statement admitted for the limited purpose of explaining subsequent police action as substantive evidence of guilt because the state court

reasonably concluded that there was significant evidence of petitioner's guilt and therefore no prejudice).

### CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court=s assessment of Petitioner=s claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. '2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED t**hat the petition of Stanley Robinson for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED t**hat a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

*[Signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2013.